**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 18-3559 & 18-3668

_____

Ralph Briggs, Sr.
                                        Appellant in No. 18-3559

v.

Potter County; Glenn Drake, II; Susan Kefover; Paul Heimel;
Douglas Morley; Angela Milford; Kenneth Sauley
Ralph Briggs, Sr.
                                        Appellant in No. 18-3668

_____

Nos. 18-3560 & 18-3669

_____

Roy Hunt,
                                        Appellant in No. 18-3560

v.

Porter County; Glenn Drake, II; Susan Kefover; Paul Heimel;
Douglas Morley; Angela Milford; Kenneth Sauley

Appellant in No. 18-3669

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court Nos.:  4-17-cv-00419 and 4-16-cv-01729)
District Court Judge:  Honorable Matthew W. Brann

_____

Argued on July 9, 2019

(Opinion filed: September 12, 2019)

Before: McKEE, ROTH and RENDELL, <u>Circuit Judges</u>

Michael J. Zicolello [ARGUED]
Schemery Zicolello
333 Market Street
Williamsport, PA 17701
        *Counsel for Ralph Briggs*

Joshua J. Cochran    [ARGUED]
Schemery Zicolello
333 Market Street
Williamsport, PA 17701
        *Counsel for Roy Hunt*

Robin A. Reed        [ARGUED]
McNerney Page Vanderlin & Hall
433 Market Street
P.O. Box 7
Williamsport, PA 17701
        *Counsel for Potter County; Glenn C. Drake, II;*
        *Susan Kefover; Paul Heimel; Douglas Morley;*
        *Angela Milford and Kenneth Sauley*

———————————

OPINION[*]

———————————

**RENDELL**, *Circuit Judge*.

Appellants Ralph Briggs and Roy Hunt were corrections officers at the Potter

County Jail ("PCJ").  They both ran for Potter County Sheriff, losing in the Republican

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

primary to the eventual winner, Glenn Drake II. Once Drake took office, they were both fired. Defendant-appellees, including Potter County, Drake, and other individual defendants, assert that Briggs and Hunt were fired for violating various jail policies. But Briggs and Hunt urge that they were fired in retaliation for engaging in protected First Amendment activity, namely, freedom of speech, political association, and union activity. The District Court granted summary judgment in favor of the defendants. We conclude that there are genuine disputes of material fact regarding whether Briggs's and Hunt's terminations were retaliatory, but there are other aspects of the District Court's ruling with which we agree. Therefore, we will reverse the District Court's summary judgment order in part and affirm in part.[1]

I[2]

In the Republican primary for Potter County Sheriff, Hunt and Briggs ran against Drake, who at the time was the Chief Deputy Sheriff. Drake, who had retired from the Pennsylvania State Police Department, was brought into the Chief Deputy job by the previous Sheriff, Ken Sauley, with the understanding that he would run for Sheriff at the

[1] Because we have consolidated multiple cases for disposition on appeal, there are two sets of briefs and two sets of appendices that we will cite. Hunt's and Briggs's briefs will be cited using their names. Citations to Appellees' brief will be preceded by an H if it is the brief in response to Hunt's opening brief, and a B if it is in response to Briggs's opening brief. Similarly, the appendix associated with Hunt's case will be cited as HA, and the appendix associated with Briggs's case will be cited as BA.

[2] Because we review the District Court's grant of summary judgment for Appellees, we review the facts in the light most favorable to Briggs and Hunt. *See Bradley v. W. Chester Univ.*, 880 F.3d 643, 650 (3d Cir. 2018). Where there are significant disputes regarding the facts, we have noted them in the footnotes.

3

next election. According to Briggs, the last three Sheriffs had attained the office via this route—retiring from the Pennsylvania State Police, followed by appointment to the Chief Deputy position, and then election to Sheriff. Briggs and Hunt questioned the wisdom of this practice during the campaign.

Hunt and Briggs were critical of Drake during the campaign. Hunt believed that Drake was conducting campaign activities "on County property, in his official uniform, and during time that he was to have been at work for the County."[3] Hunt Br. 5. He believed that these actions violated federal, state, and county law, and reported Drake to the District Attorney, the Pennsylvania Attorney General, and the Potter County Commissioners at a public Commissioners' meeting. Briggs also attended the meeting and raised similar concerns. Hunt asserts that officials were dismissive of their claims: Susan Kefover, one of three Commissioners of Potter County, stated "that's how things were done in Potter County;" and Drake "angrily confronted" him about the allegations. Hunt Br. 6.

Drake was endorsed by the Deputy Warden of PCJ, Angela Milford, the then-Sheriff, Ken Sauley, and a Potter County Commissioner, Douglas Morley, among others. During the campaign, Briggs advocated eliminating the position of Deputy Warden. Hunt's campaign was also critical of the current leadership, and he stressed the need to

---

[3] Appellees assert that "Drake self-reported to Sauley and Kefover that he had inadvertently wore his Deputy Sheriff's uniform to a campaign event and apologized." H Appellee Br. 14.

4

boost morale, cut costs, and more diligently follow state law. Drake was ultimately victorious in the primary and went on to win the general election.

After the primary, but before Drake took office, Briggs asserts that he was subjected to a series of retaliatory employment actions. First, he received an Employee Warning with four separate allegations: (1) failure to strip search an inmate; (2) failure to support a fellow Corrections Officer, Kevin Hannan, when he was booking a new inmate; (3) being rude to an inmate when passing out commissary items; and (4) taking excessive smoke breaks. Second, Briggs was issued another Employee Warning for accepting three photographs from an individual who was attempting to deliver them to an inmate. Third, Officer Hannan emailed the Deputy Warden of PCJ, Angela Milford, a photograph of Briggs allegedly sleeping on a bench. Sauley immediately fired Briggs, but his termination was rescinded the next day. Sauley instead imposed a two-day suspension with 90 days of probation. Fourth, Briggs was accused of disclosing confidential information to a woman who called to ask if a certain inmate was taking his medication. And, finally, Briggs was seen flicking the lights in a holding cell on January 13, 2016.[4] On that same day (nine days after Drake assumed the office of Sheriff), Briggs was fired for flicking the lights and disclosing confidential information. After Briggs's termination, Officer Hannan was promoted to his position.

---

[4] Appellees assert that the inmate in the cell was on suicide watch, that Briggs laughed while flicking the lights, and that he did so to intentionally agitate the inmate. H Appellee Br. 8.

5

In addition to serving as a Corrections Officer, Hunt was also a shop steward for PCJ's labor union, the Teamsters Local Union No. 110. Four days after Briggs was fired, Hunt, acting in capacity as Union Steward, "grieved the termination of Briggs under the CBA and notified the Defendants of his role in investigating and prosecuting the grievance for the Union." Hunt Br. 6. Hunt claims that approximately a week later (February 2, 2016) "Drake and Milford initiated unfounded disciplinary writeups against Roy under the Jail cell phone policy."[5] *Id.*

While investigating Briggs's termination, Hunt discovered that Briggs had been accused of sleeping on the job. On February 14, Hunt observed two officers, Whitman and Wilson, sleeping on the job. He reported the incident up the chain of command, but no action came of it. On February 18, 2016, Hunt met with Kefover, and requested relevant surveillance footage of Whitman and Wilson,[6] intending to use it to show that sleeping on the job was commonplace and never punished. Hunt states that Kefover "registered her displeasure" with his request, telling him that "if you live by the sword, you die by the sword." Hunt Br. 8. Kefover told Drake about Hunt's request, and also put her recollection

---

[5] Appellees assert that, shortly after he assumed office, Drake held a meeting with all prison personnel in which he stated that enforcing the cell phone policy would become a priority. Hunt Br. 9.

[6] Appellees assert that Hunt did not follow jail policy, in that he should have reported the sleeping incident to Milford and Drake. Instead, he waited four days, did not report the incident to Milford and Drake, and asked Kefover for the tapes. H Appellee Br. 10. Hunt asserts that he had reported the incident to the Officer in Charge, and that Drake had directed that all complaints be reported in this manner. Further, Hunt asserts that he had reported sleeping incidents to Milford in the past and that no action had ever been taken. Hunt Br. 7.

6

in a memo, *see* HA 621. Drake described this incident as "the straw that broke the camel's back" in the decision to fire Hunt. Hunt was never given the tapes, which he states were destroyed. *Id.* Then, on February 23, Drake and Milford fired Hunt. *See* HA 5. Hunt states that the firing was "***expressly*** for approaching Kefover in his Union Steward status to obtain a copy of the videotape." *Id.* (emphasis in original).[7]

Hunt and Briggs filed this suit in U.S. District Court for the Middle District of Pennsylvania, alleging that they were fired in retaliation for exercising their First Amendment rights to speech, political association, and (in Hunt's case only) union association. *See* HA 6; BA 5. Hunt also brought a claim under the Pennsylvania Whistleblower Law. *See* 43 P.S. § 1423. The District Court granted summary judgment for the defendants. *See* HA 3-9; BA 3-9. The Court held that neither Briggs nor Hunt could establish a causal connection between their protected activity and their terminations, as approximately eight months elapsed between the primary campaign and their terminations. The Court also held that Hunt's union activity was not protected, as it was not related to matters of public concern. *See id.*

---

[7] Appellees assert that "Hunt had a history of disrespect for and insubordination against Milford." Hunt Br. 6. Appellees cite a 2013 incident in which Hunt was giving a written warning by Milford for "holding a memorandum written by her up to the Control Room security camera and pretending to wipe his behind with it." *Id.* It also cites a 2014 incident in which Hunt "badger[ed]" Milford over a time-card issue. *Id.* Hunt allegedly disregarded instructions that he was not allowed to go to the Fiscal Office to investigate pay issues, and was issued a written reprimand. *Id.* at 7. He was also issued a written reprimand for "abandon[ing] his post in an act of disrespect to Milford in response to Milford instructing him to remove an urinal with his urine in it from the lunchroom/breakroom." *Id.*

Hunt and Briggs filed these timely appeals, which we have consolidated for argument and disposition.

## II

The District Court exercised jurisdiction pursuant to 29 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a District Court's grant of summary judgment *de novo*" and "draw all reasonable inferences in favor of the nonmoving party." *Bradley v. W. Chester Univ.*, 880 F.3d 643, 650 (3d Cir. 2018). Summary judgment is appropriate where the record shows "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010) (quoting Fed.R.Civ.P. 56(c)).

## III

Briggs and Hunt bring First Amendment retaliation claims under 42 U.S.C. § 1983.[8] Briggs urges that he was retaliated against on the basis of his speech and political association.[9] Hunt also makes political association and speech claims, as well as a union association claim and a claim under the Pennsylvania Whistleblower Act.[10] We first

---

[8] "To establish any claim under § 1983, a plaintiff must demonstrate that (1) the conduct at issue was committed by a person acting under the color of state law, and (2) the complained-of conduct deprived the plaintiff of rights secured under the Constitution or federal law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 n.6 (3d Cir. 2019). Only the second question is at issue here.

[9] Briggs has claims remaining against Drake, Milford and Sauley (claims against the County, Kefover, Heimel and Morley were dismissed before summary judgment).

[10] Hunt has claims remaining against Potter County, Drake, Milford, Kefover, Heimel, and Morley.

address the First Amendment claims, followed by Hunt's state law claim and Appellees' claims that Appellants' claims are barred by waiver or preemption.

## A

To prevail on a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'" *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). The first question is a legal determination, while the latter two are questions of fact. There is no dispute that being fired is a "retaliatory action" that satisfies part two of the test. Therefore, we begin by addressing the threshold legal question: whether Briggs and Hunt engaged in constitutionally protected activities. Then, we address the factual question embodied in part three of the test: whether there is a causal link between Briggs's and Hunt's protected activities and their firings.

### 1

There are three main activities that Briggs and Hunt allege were protected: (1) speech, specifically, criticizing Drake during the campaign and at the public Commissioners' meeting; (2) association, specifically, membership in a political faction opposed to Drake and campaigning against Drake; and (3) for Hunt only, union activity,

specifically, his position as a union steward and the actions he took pursuing Briggs's grievance. We address these issues in turn.

Beginning with Briggs's and Hunt's speech claims, we find that their activity is constitutionally protected. A public employee's speech is considered to be a protected activity if: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006)). Briggs's and Hunt's speech satisfies all three elements.

First, these statements were made in the context of a political campaign, which is necessarily a function of one's actions as a citizen. Second, the issues that they raised, including possible corruption in the Sheriff's Office and policy views as to how the office should function, are matters of public concern. *See, e.g.*, *Lane v. Franks*, 573 U.S. 228, 241 (2014) ("The content of Lane's testimony—corruption in a public program and misuse of state funds—obviously involves a matter of significant public concern."). And third, balancing "the public employee's interest in speaking about a matter of public concern and the value to the community of [his] being free to speak on such matters" against "the government's interest as an employer in promoting the efficiency of the services it performs through its employees," there is no reason for prison officials to have treated Hunt

and Briggs differently because of their comments. *Azzaro v. Cty. of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997) (en banc).

Hunt's and Briggs's campaigns against Drake are also protected associational activities. The quintessential political association case involves the termination of an employee based on membership in a different political party. But such claims can also be made on the basis of membership in different factions within the same party. *See Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 272 (3d Cir. 2007) ("[A] plaintiff can meet the second prong of a *prima facie* political discrimination claim if she suffers because of active support for a losing candidate within the same political party."). In *Curinga v. City of Clairton*, 357 F.3d 305 (3d Cir. 2004), we held that a City employee's campaign against the "establishment" members of his own party "involved a matter of public concern." *See Curinga*, 357 F.3d 305, 311 (3d Cir. 2004) ("Primary election fights can be famously brutal, sometimes more so than contests in the general election, and animosity between candidates is likely to result."). Because Hunt and Briggs were clearly in a different faction of the party than Drake, their campaign against him in the Republican primary was protected associational activity under the First Amendment.[11]

---

[11] We note that there is obvious overlap between Briggs's and Hunt's speech claims and their association claims. *See Curinga*, 357 F.3d at 309 ("Both [speech and association] are implicated when a high-level government employee speaks out against his public employer during an election campaign."). In *Curinga*, we held that "in most cases, where a confidential or policy making employee engages in speech or conduct against his public employer, the better analytical approach is found under the freedom of speech doctrine." *Id.* Although *Curinga* dealt with policymaking employees, its teaching on this point is apposite to the instant case. Therefore, we leave it to the District Court's discretion to

11

Union membership is also a protected activity. In *Palardy*, we held that "mere membership in a public union is always a matter of public concern," thus, "union membership is worthy of constitutional protection." 906 F.3d 76, 83–84 (3d Cir. 2018). More recently, in *Baloga v. Pittston Area School District*, 927 F.3d 742 (3d Cir. 2019), we held that "retaliation against a union leader for the union's decision to file a grievance—as distinct from retaliation based on the substance of the grievance—constitutes retaliation based on association rather than on speech per se." *Baloga*, 927 F.3d at 755. This covers precisely the conduct in which Hunt alleges he engaged. Moreover, contrary to the District Court's assertion, "there is no need to make a separate showing of public concern for a pure union association claim because membership in a public union is 'always a matter of public concern.'" *Id.* at 749 (quoting *Palardy*, 906 F.3d at 80–81). Accordingly, we hold that Hunt's actions as Union Steward constitute protected activity.

2

Having established that Briggs and Hunt engaged in protected activities, we move on to the question of causation. We find that genuine disputes of material fact remain regarding this question. The District Court found that the temporal proximity between Briggs's and Hunt's protected activities during the campaign and their terminations (approximately 8 months) was not "unusually suggestive." BA 8. But this interpretation ignores the fact that Briggs was fired a mere eight days after Drake took office and gained

---

decide whether to consolidate Briggs's and Hunt's association and speech claims under one doctrine or the other for further proceedings.

12

the power to fire him. Moreover, Hunt was fired approximately a month after Briggs, while he was pursuing a grievance on behalf of Briggs. A reasonable jury could certainly find this brief temporal proximity to be suggestive of a retaliatory firing.

The District Court's opinion also glosses over serious disputes that the parties have regarding the facts of the case. It concluded that Briggs "failed to sufficiently discredit Defendants' explanation of their decision to discipline and eventually terminate [him]," BA 9, and that "[a]t most, the record evidence supports finding a causal connection between Mr. Hunt's request for surveillance tapes and his termination," but that such activity was not protected, HA 10. As to the association and speech claims, Appellees allege that Briggs and Hunt violated various jail policies: flicking the lights in a jail cell (Briggs), disclosing confidential inmate information (Briggs), and bypassing PCJ's chain of command (Hunt). Briggs, however, disputes that he was fired because of these alleged violations. He asserts that the evidence that he violated jail policies in disclosing confidential information is weak: he argues that it was "known that the caller was associated with the inmate," and he asserts that no one was able to identify what aspect of the information he conveyed was confidential. Briggs Br. 21. He also asserts that flicking the lights in holding cells is common practice, and one that almost all officers have participated in without being reprimanded. *See* Briggs Br. 22. Furthermore, Briggs claims that all complaints against him came from supporters of Drake (Officers Hannan, Goode, and LeBar) and that he was replaced by another Drake supporter (Officer Hannan). *Id.*

13

Both positions have support in the record. The District Court made conclusions that a jury should address. These are disputes that should not be resolved on summary judgment.

This holds also true with Hunt's union association claim. Appellees allege that Hunt did not follow proper protocol when pursuing Briggs's grievance. But Hunt urges that he was fired for doing his job: zealously advocating on behalf of his union members. As evidence, he points to the following facts: just a week after he filed a grievance as union steward on behalf of Briggs, "Drake and Milford initiated unfounded disciplinary warnings against him;" at his meeting with Kefover regarding his request for surveillance footage, Kefover threatened him; and just days later, Drake reprimanded and terminated Hunt for approaching Kefover. Hunt Br. 16-17. Moreover, Hunt asserts that he was negotiating a new CBA at the time, and that Drake had registered his displeasure by calling him a "pink elephant." Hunt Br. 17. And Commissioner Kefover testified that the grievances filed by Hunt were "overbearing." *Id.* Hunt also asserts that, since his firing, "Drake boasted that . . . he had received no Union grievances." *Id.* (citing HA 994). As with the speech and association claims, both sides find support for their arguments in the record. Therefore, we cannot resolve this dispute as a matter of law on summary judgment.

Accordingly, we hold that the District Court erred in holding, as a matter of law, that there was no causal link between Hunt's and Briggs's protected activities and their terminations as it relates to the individual defendant-appellees. We will affirm the District Court's summary judgment order, however, as it relates to Briggs's and Hunt's claims against Potter County. To prevail against Potter County, Appellants must show that the

14

County had a policy or custom that caused "the specific deprivation of constitutional rights at issue." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)). While Briggs and Hunt have provided evidence that particular individuals may have deprived them of their constitutional rights, they have not provided any evidence that Potter County had a specific *policy* that deprived them of their constitutional rights. Accordingly, their claims against Potter County fail, and we will affirm that aspect of the District Court's ruling.

B

Hunt also brings a claim under the Pennsylvania Whistleblower Law. *See* 43 P.S. § 1423. This law prohibits retaliating against an employee who "makes a good faith report . . . of wrongdoing or waste by a public body or an instance of waste by any other employer . . . ." *Id.* Wrongdoing is defined as: "A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id.* § 1422. If a plaintiff establishes wrongdoing, he must also establish a causal connection between his reporting of the wrongdoing and his firing. *See Golaschevsky v. Dep't of Envtl. Prot.*, 554 Pa. 157, 163 (1998). The District Court disposed of this claim in a footnote, finding that there was "no evidence of such a connection." HA 10.

Hunt argues that he reported wrongdoing when he raised concerns, both publicly and privately, about Drake campaigning in his Sheriff's uniform and on County property

15

and time.  We hold that this satisfies the requirement of reporting wrongdoing.  The second issue—that of causation—involves the same factual issues as Appellants' First Amendment retaliation claims.  As with those claims, we hold that there are genuine disputes of material fact.  Accordingly, we will reverse the District Court's summary judgment order on this claim.

C

Lastly, Appellees argue that Appellants claims are barred for three reasons: (1) they failed to exhaust their remedies under the CBA; (2) their claims are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and (3) their claims are preempted by the Pennsylvania Public Employee Relations Act ("PERA"), 43 P.S. § 1101.903.  The District Court rejected all three of these arguments, and we agree with its reasoning.  The Court held that the CBA provided a grievance process for "[a]ll disputes and any grievance . . . relating to the application or interpretation of th[at] Agreement or any dispute concerning the wages, hours and working conditions of the employees covered by this Agreement."  BA 6.  But Appellants' claims arise under state law and the Constitution, so they are not barred for failure to exhaust remedies under the CBA.  Similarly, the LMRA and PERA apply to "[s]uits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185(a), and "disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement," 43 P.S. § 1101.903, respectively.  Once again, Appellants' claims arise under state law and the Constitution, so they are not preempted by the LMRA or PERA.

16

## IV

For the aforementioned reasons, we vacate the District Court's order granting summary judgment for the individual defendants on Briggs's and Hunt's First Amendment retaliation claims and on Hunt's claim under the Pennsylvania Whistleblower Law and remand for further proceedings on these claims. We will also affirm the District Court's order granting summary judgment for Potter County and its order to the extent that it held that Briggs's and Hunt's claims are not barred by the CBA, the LMRA, and PERA.